UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | 5:26-cv-00720-HDV-SK | Date | March 2, 2026 |
|---|---|---|---|
| Title | *Ibrahim Adi Putra Mohd Yusof v. Kristo Noem, et al.* | | |

Present: The Honorable    Hernán D. Vera, United States District Judge

| Wendy Hernandez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **(IN CHAMBERS) ORDER GRANTING PRELIMINARY INJUNCTION [5]**

Before the Court is Petitioner Ibrahim Adi Putra Mohd Yusof's *Ex Parte* Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction ("TRO Application") [Dkt. 5]. Petitioner's TRO Application asks this Court to, *inter alia*: (1) release Petitioner from detention under the terms of his 2012 release, (2) enjoin Respondents from removing Petitioner to a third country absent notice and an opportunity for him to apply for asylum, withholding of removal, and protection under the Convention Against Torture. *Id.*

On February 17, 2026, based on its initial findings that the TRO Application raised serious questions as to Respondents' compliance with U.S.C. § 1231 and 8 C.F.R. § 241.13(i) in detaining Petitioner, this Court immediately issued emergency relief maintaining the status quo and setting a schedule for an opposition, reply, and a hearing on a preliminary injunction. [Dkt. 7]. On February 24, 2026 the government filed a "Response" which states, in full:

> On February 16, 2026, Petitioner filed a petition for writ of habeas corpus seeking an order requiring Respondents to release the Petitioner from immigration detention. *See* Dkt. 1. He then filed an *ex parte* Motion for a Temporary Restraining Order on February 17, 2026. *See* Dkt. 5. Respondents are not presenting an opposition argument.

Federal Respondent's Response to Petitioner's *Ex Parte* Application for Temporary Restraining Order ("Response") [Dkt. 9].

Given the government's concession, and the Court's own independent findings concerning the merits of Petitioner's requests,[1] the Court issues the following preliminary injunction:

_____

[1] The Court can grant the preliminary injunction solely on the basis of the government's failure to oppose it.  *See* C.D. Cal. L.R. 7-12.  But the Court is also satisfied that the standard for issuing a preliminary injunction is met here.  To be entitled to a preliminary injunction, the movant must establish that (1) he is likely to succeed on the merits, (2) he is likely to suffer irreparable harm absent the preliminary injunction, (3) the balance of equities tips in his favor, and (4) a preliminary injunction is in the public interest.  *Winter v. Nat. Ress. Def. Council, Inc*., 555 U.S. 7, 20 (2008).

Petitioner was born in Brunei in 1989 and entered the United States in 1998 under the Visa Waiver Program when he was nine years old.  Declaration of Stacy Tolchin in Support of Petitioner's Petition for Writ of Habeas Corpus ("Tolchin Decl.") ¶¶ 13, 11, 12 Exs. I, G, H [Dkt. 4].  Petitioner, initially detained by immigration authorities on May 3, 2012, was ordered removed under the Visa Waiver Program.  *Id.* ¶¶ 9, 10, Exs. E, F; *see* 8 U.S.C. § 1187.  Because of Petitioner's entry pursuant to the Visa Waiver Program, he was not eligible for a removal hearing before an immigration judge, rendering his removal order final on May 3, 2012.  TRO Application at 2 citing 8 C.F.R. §§ 1208.2(b), (c)(1)(iii).  Following the entry of this order, Petitioner was provided an "asylum only" hearing after he expressed a reasonable fear of persecution and/or torture; his case was transferred to an immigration judge on May 9, 2012.  Tolchin Decl. ¶ 8, Ex. D.  After serving over seven months in detention, Petitioner was released on December 20, 2012 on a $5,000 bond.  *Id.* ¶ 9, Ex. E.  On July 18, 2024, an immigration judge granted Petitioner withholding of removal; based upon this grant, he cannot be removed to Brunei.  TRO Application at 2; Tolchin Decl. ¶ 7, Ex. C.  Petitioner was given an order of supervision and required to report on a regular basis.  Tolchin Decl. ¶ 5, Ex. B.  He was detained on February 12, 2026, when he reported for his regularly scheduled appointment.  *Id.* ¶ 11, Ex. G.  Petitioner was told that the government was detaining him in order to seek his removal to a third country; Petitioner cannot be removed to Brunei.  *Id.* ¶¶ 7, 11, Exs. C, G.  His order of revocation, signed by Officer Nguuyen, a detention and deportation officer, was not signed by someone authorized under 8 C.F.R. § 241.4(1)(2).  *Id.* ¶ 11, Ex. G.

In *Zadvydas v. Davis*, the Supreme Court held that a noncitizen may be detained only for a period "reasonably necessary" to bring about their removal from the United States—presumptively six months.  533 U.S. 678, 689, 701 (2001).  After that point, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must either rebut that showing or release them.  *Id.* at 701.  Petitioner has now been detained more than six months, and has provided good reason to believe there is no significant likelihood of his removal in the reasonably foreseeable future, as the government cannot remove him to Brunei and has not identified any other third country for his removal.  Indeed, the government has not even attempted to rebut this showing.  *See* Response.  Petitioner has thus demonstrated a likelihood of success on the merits.

_____

1.  Respondents are ordered to *release* Petitioner from detention *forthwith*.

2.  Respondents are *enjoined and restrained* from re-detaining Petitioner unless he receives due process as required under 8 C.F.R. §§ 241.4(l)(1), 241.13(i)(3) and the Due Process Clause of the Fifth Amendment.

3.  Respondents are *enjoined and restrained* from removing Petitioner to a third country without notice and a meaningful opportunity to respond and contest such removal.[2]

4.  Respondents are *ordered* to immediately provide copies of this Order to the immigration agents responsible for Petitioner's immigration case, and to place a copy of this Order in Petitioner's A-file.

The **hearing set for March 5, 2026 is vacated** as moot.  The parties are ordered to file, within ten days of this Order, a joint report regarding the status of compliance with these mandates.

**IT IS SO ORDERED.**

---

The other three factors also weigh in favor of a preliminary injunction.  "[U]nlawful detention certainly constitutes 'extreme or very serious'" injury which "is not compensable in damages." *Hernandez v. Sessions*, 872 F.3d 976, 999 (9th Cir. 2017).  "[I]mmigration detention" imposes additional "irreparable harms," including the "subpar medical and psychiatric care in ICE detention facilities."  *Id*. at 995.  And "it is always in the public interest to prevent the violation of a party's constitutional rights." *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023) (citation omitted).

[2] Rule 65(c) requires that, prior to granting injunctive relief, the Court require a movant to pay security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  "Despite the seemingly mandatory language, Rule 65(c) invests the district court with discretion as to the amount of security required, if any." *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (citation omitted).  Accordingly, the Court waives the bond requirement here, as it is unlikely that the government will incur any significant cost and requiring a bond "would have a negative impact on plaintiff's constitutional rights, as well as the constitutional rights of other members of the public." *Baca v. Moreno Valley Unified Sch. Dist.*, 936 F. Supp. 719, 738 (C.D. Cal. 1996) (citation omitted).